# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
E.S., a minor, by and through          *
her parents, TROY SWEATT and           *     No. 15-1222V
BRITTANY SWEATT,                       *
                                       *     Special Master Christian J. Moran
              Petitioners,             *
                                       *     Filed: May 12, 2017
v.                                     *
                                       *     Attorneys' fees and costs;
SECRETARY OF HEALTH                    *     reasonable hourly rates for
AND HUMAN SERVICES,                    *     attorneys and paralegals from
                                       *     Memphis, Tennessee
              Respondent.              *
* * * * * * * * * * * * * * * * * * * *
```

<u>William E. Cochran, Jr.</u>, Black McLaren, et al., PC, Memphis, TN, for Petitioners;
<u>Robert P. Coleman, III</u>, United States Dep't of Justice, Washington, DC, for
Respondent.

## PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On December 6, 2016, petitioners filed a motion for attorneys' fees and
costs, seeking a total of $30,035.64 ($26,034.00 in attorneys' fees, $1,996.14 in
attorneys' costs, and $2,005.50 in costs borne by petitioners). **Petitioners are
awarded $24,121.24.** The basis for the award and reasons for deductions follow.

On October 20, 2015, Troy and Brittany Sweatt filed a petition on behalf of
their minor child, E.S., under the National Childhood Vaccine Injury Act, 42
U.S.C. §300a–10 through 34 (2012), alleging that the measles-mumps-rubella
vaccine, which E.S. received on or about October 30, 2013, caused E.S. to develop

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and
Promotion of Electronic Government Services), requires that the Court post this decision on its
website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing
redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).
Any redactions ordered by the special master will appear in the document posted on the website.

idiopathic thrombocytopenic purpura.  The undersigned issued a decision awarding compensation on behalf of E.S. based on the parties' stipulation.  <u>Decision</u>, 2016 WL 6135656 (Sept. 26, 2016).

Having received compensation, the petitioners filed a motion for an award of attorneys' fees and costs.  The primary attorney responsible for representing the petitioners was William Cochran.  Mr. Cochran received some assistance from a senior partner, Mr. Michael McLaren, as well as paralegals at his law firm.  The petitioners requested that their attorneys and paralegals be compensated at the forum rate and supported this request with a 29-page brief.  Pet'rs' Mot., filed Dec. 6, 2016.

In response, the Secretary stated that he is satisfied that petitioners are entitled to an award of attorneys' fees and costs.  As to the amount, the Secretary left the determination to the undersigned's discretion.  Resp't's Resp., filed Dec. 14, 2016.

Because petitioners received compensation, they are entitled to an award of attorneys' fees and costs.  42 U.S.C. § 300aa-15(e).  The unresolved question is the reasonable amount of attorneys' fees and costs.

## I.      Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  <u>Avera v. Sec'y of Health & Human Servs.</u>, 515 F.3d 1343, 1348 (Fed. Cir. 2008).  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  <u>Id.</u> at 1347-48 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  <u>Id.</u> at 1348.  In this case, the lodestar calculation produces a reasonable attorneys' fee.  Therefore, an adjustment is not required and the analysis focuses on the two components of the lodestar formula: a reasonable number of hours and a reasonable hourly rate.

### A.      Reasonable Number of Hours

One element of the lodestar formula, the number of hours, is not seriously disputed.  Reasonable hours are not excessive, redundant, or otherwise unnecessary.  See <u>Saxton v. Sec'y of Health & Human Servs.</u>, 3 F.3d 1517, 1521

(Fed. Cir. 1993).  The Secretary did not directly challenge any of the requested hours as unreasonable.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness.  See Shea v. Sec'y of Health & Human Servs., No. 13-737V, 2015 WL 9594109, at *2 (Fed. Cl. Spec. Mstr. Dec. 10, 2015) ("special masters are not obligated to evaluate an attorney's billing records on a line-by-line basis in making the reasonableness determination . . . and certainly need not do so when Respondent has not attempted to highlight any specific alleged inefficiencies").  Overall, the hours that petitioners' counsel worked are reasonable.  See Anderson v. Sec'y of Health & Human Servs., No. 14-879V, 2016 WL 4169107 (Fed. Cl. Spec. Mstr. Jun. 28, 2016).  Additionally, the timesheets are sufficiently detailed.

There is, however, one item meriting acknowledgment.  Another attorney at Mr. Cochran's firm, Mr. Chris Webb, billed for minimal time worked on this case. His contribution was to "assist in evaluation of settlement value of case." Timesheets.  In submitting an application based on the timesheets, a petitioners' attorney is expected to exercise "billing judgment."  Saxton, 3 F.3d 1521 (Fed. Cir. 1993).  In some cases, an appropriate "billing judgment" is to charge for all the work listed on the invoice.  In other cases, an appropriate "billing judgment" is to reduce or to eliminate time charged for a particular task.  Participation of more than two attorneys tends to be reasonable only if the additional attorney(s) bring expertise that the primary attorney does not have.  Petitioners have not demonstrated that Mr. Webb's expertise in case valuation differs in any meaningful way from Mr. Cochran's experience.  Based on the undersigned's experience, and the expectation of attorneys to exercise "billing judgment" to avoid duplication in effort, the time billed by Mr. Webb is eliminated, resulting in a deduction of **$61.00**.

## B.    Reasonable Hourly Rate

Unlike the reasonable number of hours component to the lodestar formula, there is a significant question about the reasonable hourly rate, despite the Secretary's lack of objection.  Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation.  Avera, 515 F.3d at 1349.  There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower.  Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v.

U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).  In this case, all the attorneys' work was done outside of the District of Columbia.

Thus, under Avera, the determination of an attorney's hourly rate is a three-step process.  "First, the hourly rate in the attorneys' local area must be established. Second, the hourly rate for attorneys in Washington, DC must be established. Third, these two rates must be compared to determine whether there is a very significant difference in compensation."  Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2009 WL 1838979, at *4 (Fed. Cl. Spec. Mstr. June 12, 2009) (citing Avera, 515.3d at 1353 (Rader, J. concurring)), mot. for rev. denied (slip op. Dec. 10, 2009), aff'd, 634 F.3d 1283 (Fed. Cir. 2011), corrected, 2013 WL 680760 (Fed. Cl. Spec. Mstr. Jan. 30, 2013).

For these attorneys, two special masters have followed the Avera method of analysis yet reached divergent outcomes.  One special master agreed with the petitioners that Mr. McLaren and Mr. Cochran are entitled to forum rates.  The other special master agreed with the Secretary that local rates were appropriate. The divergent outcomes are summarized in the following chart:

| Case Name, Docket # | Henry, 15-545V | Hoehner, 14-673V |
|---|---|---|
| Date of Decision | Nov. 4, 2016 | Nov. 7, 2016 |
| Operative Year | 2016 | 2015 |
| | | |
| Mr. McLaren | | |
|     Wash. DC Rate | $425 | $420 |
|     Memphis, TN Rate | $350 | $322 |
|     % Difference | 21.4 | 30.4 |
|     Awarded | $425 (forum rate) | $322 (local rate) |
| | | |
| Mr. Cochran | | |
|     Wash. DC Rate | $355 | $345 |
|     Memphis, TN Rate | $300 | $276 |
|     % Difference | 18.2 | 25.0 |

Neither Henry v. Sec'y of Health & Human Servs., No. 15-545V, 2016 WL 7189925, at *10 (Fed. Cl. Nov. 4, 2016), nor Hoehner v. Sec'y of Health & Human Servs., No. 14-637V, 2016 WL 7048793, at *8 (Fed. Cl. Nov. 7, 2016), establishes

binding precedent.  Because of the divergence, the undersigned analyzes the issues, again.

      1.    <u>Step One: Determine the Forum Rate</u>

<u>McCulloch v. Sec'y of Health & Human Servs.</u>, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (outlining forum rate ranges based on experience), <u>reconsideration denied</u>, No. 09-293V, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015), set various forum rates.  The relevant categories are:

More than 20 years of experience in practice, $350 – $425;
11 – 19 years of experience in practice, $300 – $375.

Here, Mr. McLaren deserves to be at or near the top of the range for attorneys with more than 20 years of experience.  He has practiced for 41 years.  He has also regularly represented petitioners in the Vaccine Program for 17 years.  In this span, Mr. McLaren has not represented Vaccine Program petitioners exclusively and his experience in other practice areas probably contributes to his skill in the Vaccine Program.  A reasonable forum rate for Mr. McLaren would, therefore, be $420.00 per hour.

Mr. Cochran was admitted to the bar in 2001.  He has appeared in the Vaccine Program since 2008.  Like Mr. McLaren, Mr. Cochran represents clients in a variety of fields.  Mr. Cochran's work in the Vaccine Program has been very good to excellent.  A reasonable forum rate for Mr. Cochran would be $365 per hour.

      2.    <u>Step Two:  Determine the Local Rate</u>

Mr. McLaren and Mr. Cochran practice in Memphis, Tennessee.  Thus, the critical issue — the one on which <u>Henry</u> and <u>Hoehner</u> disagreed — is a rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  <u>Blum</u>, 465 U.S. at 896.

The standard from <u>Blum</u> is "similar services."  Therefore, in the Vaccine Program, petitioners should present information about fields of law that are not complicated because the Federal Circuit has endorsed a finding that litigation within the Vaccine Program is not complex.  <u>See</u> <u>Masias v. Sec'y of Health & Human Servs.</u>, 634 F.3d 1283, 1290 (Fed. Cir. 2011) (stating that the special

master did not err in determining that the Vaccine Program was not complex litigation).  Thus, information about attorneys who are not providing "similar services" does not assist in determining a reasonable hourly rate for these attorneys.

Despite reaching different outcomes, Henry and Hoehner considered relatively similar information to determine a reasonable rate for Memphis attorneys.  Points of information included: (a) the firm's standard retainer agreement, (b) the hourly rates awarded in a Vaccine Program case in 2011 adjusted to account for the passage of time, (c) rates awarded by courts in Tennessee, and (d) rates that the firm had accepted in the past.[2]

Before turning to a more detailed review of this information, the undersigned notes that a common factor is the rate used to account for the passage of time.  Both Henry and Hoehner used a rate of increase of 3.7 percent, which derives from the Executive Summary of the Real Rate Report ("RRR"), a product of the private sector (Datacert/Tymetrix), and referenced throughout McCulloch, 2015 WL 5634323, at *8, 9 and 16.  "The RRR reports on corporate billing rates paid to small, medium and large law firms in different practice areas serving corporate clients."  Id. at *19 (emphasis added).  Because of the differences between law firms representing corporate clients and law firms representing individuals in the Vaccine Program, however, special masters have not always used 3.7%.  See Anthony v. Sec'y of Health & Human Servs., No. 14-680V, 2016 WL 7733084 , at *4 (Fed. Cl. Spec. Mstr. Dec. 15, 2016), mot. for rev. withdrawn (May 8, 2017); Auch v. Sec'y of Health & Human Serv., No. 12-673V, 2016 WL 3944701, at *12 (Fed. Cl. Spec. Mstr. May 20, 2016) (reducing a 2015 hourly rate using the CPI inflating calculator instead of McCulloch's 3.7%).

Multiple indexes show changes in costs over time.  See Makray v. Perez, 159 F. Supp. 3d 25 (D.D.C. 2016) (describing different methods for determining rates and different inflation factors).  Each index has strengths and weaknesses as some are more specific to a particular industry and others are more specific to a geographic region.  The Bureau of Labor Statistics makes available a consumer

---

[2] After the petitioners in Henry and Hoehner submitted their motions for attorneys' fees and costs, the Secretary responded robustly.  The Secretary's engagement almost certainly assisted the special masters in finding reasonable hourly rates for attorneys in Memphis.  More recently, the Secretary has, unfortunately, stopped presenting meaningful arguments about an attorney's proposed hourly rate or proposed number of hours.

price index (CPI) and producer price indexes (PPI).  The CPI can be further refined geographically to focus on regions, and, for this case the relevant region is the south.[3]

The PPI comes from nationwide sources.  The PPI can be determined for various industries and products.  For attorneys, the relevant "industry and product" is "Office of Lawyers."  The office of lawyers can be further refined into "civil negligence and legal services," which, in turn, includes both "defendant representation" and "plaintiff representation."

The annual percentage rates of increase are presented in the following chart:

|  | CPI | PPI | | |
|---|---|---|---|---|
|  | South | Office of Lawyers | Civil Negligence | Plaintiff |
| 2012 | 1.52 | 2.75 | 1.70 | 0.93 |
| 2013 | 3.15 | 2.79 | 1.47 | 1.11 |
| 2014 | 2.20 | 3.25 | 1.58 | 0.64 |
| 2015 | 3.23 | 2.84 | 2.53 | 1.18 |
| 2016 | 3.01 | 1.90 | 2.72 | 1.62 |

If the geography of the PPI is ignored, the best fit for attorneys in the Vaccine Program is plaintiff's civil negligence.  See McCulloch, 2015 WL 5634323, at *12.  However, these values also produce the lowest rate of increase.

To avoid such a small rate of increase, the undersigned will use the PPI – Office of Lawyers, generally.  This index is usually higher than the other indexes and should, therefore, reduce litigation over the rate of increase.  See Williams v. Johnson, 174 F. Supp. 3d 336, 343 (D.D.C. 2016) (using PPI-OL to inflate Laffey matrix).[4]  The rates of increase found in the PPI-OL will be used to adjust the various data points described below.

---

[3] The Bureau of Labor Statistics also calculates the CPI at the level of some metropolitan regions.  However, Memphis, Tennessee is not one of them.

[4] United States Attorney's Office Attorney's Fees Matrix – 2015 – 2016, U.S. Dep't of Justice (May 12, 2017), https://www.justice.gov/usao-dc/file/796471/download.

a)    *Standard Retainer*

Petitioners stated that the rates in the 2016 standard retainer for non-complex, general litigation matters for their attorneys was $405 per hour for Mr. McLaren, $300 per hour for Mr. Cochran, $250 per hour for Mr. Webb, and $130 per hour for paralegals.  Pet'rs' Mot. at 13.  In support of these rates, petitioners submitted the affidavit of Mr. Cochran, which contains a plain statement that he would testify that the information found within the application is true.  The petitioners, however, did not submit a copy of the standard retainer.

The retainer could have provided useful examples of the types of cases in which a client agreed to pay these rates.  Although the attorneys say the retainer was for "non-complex" litigation, complexity is likely to be in the eye of the beholder.  See Masias, 634 F.3d at 1290.

Even if the firm's retainer were for truly "non-complex" litigation, the retainer would be adjusted to account for costs associated with non-paying clients.  Outside of the Vaccine Program, attorneys sometimes charge relatively higher hourly rates because the attorneys may not receive their entire fee.  The primary example in which an attorney is exposed to not recovering any fee is a case in which the attorney's fee is contingent upon winning some recovery for the client.  This concern is not present in Vaccine Program cases because as long as the case has a reasonable basis, special masters award attorneys' fees and costs.  See Rodriguez v. Sec'y of Health & Human Servs., 632 F.3d 1381, 1385 (Fed. Cir. 2011).

In Hoehner, the special master discounted this firm's standard retainer by an 18.3 percent risk premium.  The special master explained that attorneys do not always receive payment as set forth in their retainers:

> The undersigned was in private practice for a number of years, and knows too well the vagaries of billing—post-retainer no pay and slow pay, discounting and charge-offs, client satisfaction adjustments, client bankruptcies.  Even large firms with the resources to commit to aggressive collections build in an uncollectibles percentage into their business plans.  It is a rare small firm that does not include a 15 to 20 percent cushion in its business plan to account for these uncollected fees.

Hoehner, 2016 WL 7048793, at *7 n.12.  This explanation and associated discount
seems reasonable.

        b)    *Hourly rates awarded in a Vaccine Program case*
           *in 2011*

Before the recent controversy over the reasonable hourly rate for attorneys in
this firm, a special master determined reasonable hourly rates in 2011.  Heath v.
Sec'y of Health & Human Servs., No. 08-86V, 2011 WL 4433646 (Fed. Cl. Spec.
Mstr. Aug. 25, 2011).  For work in that case, the special master found that a
reasonable hourly rate for Mr. McLaren was $280 per hour for work performed
through 2011 and for Mr. Cochran was $240 per hour for work performed through
2010.

When those rates are increased according to the PPI-OL, the following rates
are produced.

| Heath Rates Adjusted for PPI-OL | | |
|---|---|---|
| | Mr. McLaren | Mr. Cochran |
| 2015 | $314.01 | $278.55 |
| 2016 | $319.98 | $283.84 |

        c)    *Rates awarded by courts in Tennessee*

Petitioners cite a variety of decisions from courts in Tennessee awarding
various hourly rates.  See Pet'rs' Mot. at 16-23.  Henry and Hoehner discussed
those cases as well as cases the Secretary presented.

Cole v. City of Memphis, Tennessee, No. 2:13-CV-02117-JPM-dkv, 2015
WL 5076974 (W.D. Tenn. Aug. 27, 2015), was discussed.  In 2015, a jury found
that the Memphis Police Department violated Mr. Cole's rights protected by the
Fourth Amendment to the United States Constitution and awarded him damages.
This finding made Mr. Cole eligible to receive reasonable attorneys' fees and costs
pursuant to 42 U.S.C. § 1988(b).  Id. at *6.  The Court found that a reasonable
hourly rate for Mr. Cole's senior attorney, Mr. Spence, was $350 per hour.  One
reason for this award was that the case "was of at least moderate complexity."  Id.
at *7.  The Court elaborated:  "The case included class certification, two motions
for summary judgment, multiple motions in limine, a six-day jury trial, multiple
post-verdict motions, and declaratory and injunctive relief in a complex area of the

law-constitutional due process, the Fourth Amendment, and municipal liability based on an unconstitutional custom." Id.

In All Secure Guard & Patrol Services, Inc. v. Federal Home Loan Mortgage Corp., No. 14-2575-STA-tmp, 2015 WL 7302789 (W.D. Tenn. Nov. 18, 2015), the litigation concerned a contract to provide security services at apartment complexes. The plaintiff did not comply with discovery, and the ensuing sanction included dismissal and an award of reasonable attorneys' fees. The defendant's attorney, Paul A. Matthews, requested compensation at an hourly rate of $300 an hour for work performed through March 27, 2015 and $335 per hour for work performed after that date. Id. at *2. Attorney Matthews represented that these rates were discounted from his usual rates.[5] Id. The magistrate judge found the proposed rates reasonable and the district court found no error in this finding.

Another award of attorneys' fees was made in Jacobs v. Memphis Convention and Visitors Bureau, No. 2:09-CV-02599-STA-cgc, 2012 WL 4468500 (W.D. Tenn. Sept. 7, 2012). In Jacobs, the plaintiff prevailed on his claim of copyright infringement. In passing, the magistrate judge mentioned that the plaintiff's lawyers had 12 and 36 years of experience and that each requested compensation at the rate of $300 per hour. Both rates were accepted without any evaluation. Id. at *4.

In Macklin v. Delta Metals Co. Inc., No. 2:08-CV-2667, 2011 WL 13070420 (W.D. Tenn. July 6, 2011), the plaintiff sought overtime wages pursuant to the Fair Labor Standards Act (FLSA). After the plaintiff prevailed, the district court awarded damages including attorneys' fees. The district court found that a reasonable rate of compensation for an attorney with approximately 10 years of experience in 2011 was $300 per hour. Id. at *3.

In Monroe v. FTS USA, LLC, No. 2:08-CV-2100-JTF-cgc, 2014 WL 4472720 (W.D. Tenn. July 28, 2014), the plaintiffs comprised a class of more than 300 employees who sought overtime pay, pursuant to the FLSA. The Court awarded attorneys' fees at a rate of $300 to $600 per hour. Reasons for this finding included the evidence submitted in that case (primarily affidavits from other attorneys) and the case's complexity. Id. at *12-13.

---

[5] The Board of Professional Responsibility of the Supreme Court of Tennessee indicates that Mr. Matthews was licensed to practice law in Tennessee in 1977. Thus, he had approximately 37 years of experience.

The underlying claim in <u>Oakley v. City of Memphis</u>, 566 F. App'x 425 (6th Cir. 2014) was that Memphis violated Title VII of the Civil Rights Act of 1964. For the period ending October 12, 2010, the district court considered the market rates prevailing in Memphis and determined that the lead attorney in <u>Oakley</u> should be compensated at a rate of $275 per hour.  <u>Id.</u> at 429.  On appeal, the Sixth Circuit found that this finding was not an abuse of discretion.  <u>Id.</u> at 432-33.

    d)    *Rates the firm has accepted in the past*

The undersigned has awarded attorneys' fees and costs to petitioners whom the present attorneys represented multiple times.  This background is an appropriate basis for determining a reasonable amount of attorneys' fees and costs.  <u>See</u> <u>Saxton</u>, 3 F.3d at 1521.

Before 2015, for work in the Vaccine Program, the undersigned received invoices from Mr. McLaren and Mr. Cochran.  These invoices show that the firm charged the following:

|  | Mr. McLaren | Mr. Cochran |
|---|---|---|
| 2013 | $280.00 | $250.00 |
| 2014 | $300.00 | $275.00 |
| Percentage Rate of Increase | 7.14 | 10 |

The rate of increase from 2013 to 2014 was approximately 7 percent for Mr. McLaren and 10 percent for Mr. Cochran.  Both rates of increase easily exceed the rate of increase in PPI-OL for 2013 (2.79 percent).  This relatively high rate of increase suggests that the attorneys were not reticent in seeking higher fees.

Conceivably, the attorneys may have reduced their usual hourly rates to these amounts to promote compromise with the attorneys at the Department of Justice and to avoid protracted litigation.[6]  <u>See</u> <u>Hoehner</u>, 2016 WL 7048793, at *6.  Nevertheless, a negotiation over attorneys' fees does not mean that the amount requested has no evidentiary value.  A negotiated rate may, in fact, constitute a reasonable hourly rate.  <u>See</u> <u>Summit 6, LLC v. Samsung Elecs. Co.</u>, 802 F.3d

---

[6] The spate of motions for attorneys' fees requiring adjudication from special masters seems attributable to the government's unwillingness to participate in an amicable resolution of these issues.

1283, 1299–1300 (Fed. Cir. 2015) (finding the district court did not abuse its discretion by allowing relevant settlement agreements to be considered in determining reasonable royalty rates); <u>Sabella v. Sec'y of Health & Human Servs.</u>, No. 02-1627V, 2008 WL 4426050, at *6 (Fed. Cl. Spec. Mstr. Sept. 23, 2008), <u>mot. for rev. denied in part and granted in non-relevant part</u>, 86 Fed. Cl. 201 (2009).

      e)    *Summary and Findings for Reasonable Local Rates for Mr. McLaren and Mr. Cochran*

The information relevant to determining a reasonable hourly rate for attorneys in Memphis, Tennessee is wide.  Each data point can be adjusted in one or more ways and there is no absolutely correct way to look at the information. This range of outcomes is not necessarily surprising as special masters are called to set <u>a</u> reasonable hourly rate, not <u>the</u> reasonable hourly rate.

After weighing the different data points, the undersigned finds that a reasonable local rate for Mr. McLaren in 2015 is $320 per hour.  At the PPI-OL's rate of increase, a reasonable rate for Mr. McLaren in 2016 is $326.08.

To find a reasonable hourly rate for Mr. Cochran, the undersigned determined from a series of data points that Mr. McLaren typically was compensated between 10 percent and 20 percent more than Mr. Cochran. Therefore, the undersigned maintained this ratio by finding that a reasonable local rate for Mr. Cochran would be 85 percent of Mr. McLaren's rate.  The undersigned finds that a reasonable rate for Mr. Cochran in 2015 is $272.00 per hour.  The resulting calculation is quite close to the amounts based upon <u>Heath</u> as adjusted by PPI-OL.[7]

---

[7] In determining the ratio between Mr. McLaren and Mr. Cochran, the undersigned considered, but ultimately discarded, the law firm's standard retainer, in which Mr. McLaren charges $405 per hour and Mr. Cochran $300 per hour.  The difference is 35 percent.  If the law firm's ratio were used to calculate Mr. Cochran's hourly rate, Mr. Cochran's hourly rate would be lower.

| Local (Memphis, Tennessee) Rates | | |
|---|---|---|
| | Mr. McLaren | Mr. Cochran |
| 2015 | $320 | $272.00 |
| 2016 | $326.08 | $277.17 |

3.   Step Three: Determine Whether the Forum Rate is Substantially Different from the Local Rate

As noted previously, Hoehner and Henry parted company in determining whether the difference between the forum rate and the local rate was substantial despite using the same formula.  A formula that some special masters have used to calculate the difference between the forum rate and the local rate is:

$$(((\text{forum rate} / \text{local rate}) - 1)) * 100.$$

For Mr. McLaren in 2015, the result of this calculation is 31.25 percent.  This degree of difference between Washington, DC and Memphis, Tennessee is very significant.  See Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1356-57 (Fed. Cir. 2011) (indicating that whether a particular difference is substantial is a matter of discretion for special masters).  For Mr. Cochran in 2015, the calculation yields 34.19 percent.  This difference is also very significant.  Id.

The finding that rates in Washington, DC are significantly higher than the rates in Memphis, Tennessee is consistent with the website of the Department of Economic and Community Development of the State of Tennessee.  In seeking to promote economic development, the State of Tennessee advises that: "In bustling cities and charming towns spread across three distinct regions, Tennessee offers a cost of living well below the national average."[8]  While the views of the State of Tennessee are not dispositive, its description that the cost of living is "well below the national average" reinforces the output of the mathematical formula showing a significant difference between Washington, DC and Memphis, Tennessee.

_____

[8] Tenn. Quick Facts, Tenn. Dep't of Econ. and Cmty Dev. (May 12, 2017), http://www.tnecd.com/research-and-data/tn-quick-facts/.

### 4.   Overall Finding for Mr. McLaren and Mr. Cochran

A reasonable rate of compensation for Mr. McLaren for work performed in 2015 is $320 per hour and for work performed in 2016 is $326 per hour.  For Mr. Cochran, a reasonable hourly rate for 2015 is $272 and for 2016 is $277.

### 5.   Additional Professionals

Four paralegals assisted Mr. McLaren and Mr. Cochran.  Although petitioners recognize that the forum rate for "these staff members [is] "$135/$145 per hour" (Pet'rs' Mot. at 28), the requested rate of compensation exceeds the forum rate.  Petitioners seek compensation at a rate $135 to $150 per hour in 2015 and 2016.

Other than the reference to forum rates, the petitioners have not justified the proposed hourly rate.  A review of decisions from the Vaccine Program does not produce a satisfactory answer as Henry and Hoehner reached different conclusions. For a reasonable hourly rate for paralegals in Memphis, Tennessee, Henry found $120 per hour without detailing the basis for the finding.[9]  Henry, 2016 WL 7189925, at *8.  In contrast, Hoehner found $105 per hour based upon Heath.[10] Hoehner, 2016 WL 7048793, at *8 n.16.

An independent review of federal district court cases from Tennessee suggests that a consensus is approximately $100 per hour for paralegals. Supportive cases include:  Flack v. Knox County, Tennessee, No. 3:15-cv-522-PLR-HBG, 2017 WL 627460, at *5 (E.D. Tenn. Jan. 24, 2017) ("The Court agrees with the Defendant that $140 is excessive for a paralegal in this case.  In other cases, this Court has awarded $75.00 per hour for paralegals and law students. . . Accordingly, the Court finds that $95.00 per hour is a more reasonable rate given [the paralegal's] experience, legal degree, and the work he performed"), adopted by, 2017 WL 627436 (E.D. Tenn. Feb. 14, 2017); F.D.I.C v. Thornton, No. 3:12–cv–00218, 2014 WL 4174037, at *4-5 (M.D. Tenn. Aug. 20, 2014) (compensating paralegal at $83 per hour); Schoenheit v. General Motors, LLC, No. 3:11-0207, 2014 WL 792096, at *4 (M.D. Tenn. Feb. 25, 2014) (finding $110 per hour for a

---

[9] Henry, then, increased the paralegal's local rate ($120 per hour) to a forum rate for paralegals ($145 per hour).

[10] Hoehner relied upon Heath, which, according to Hoehner, compensated paralegals at $85 per hour.  Heath, however, did not set forth an hourly rate for paralegals explicitly.

paralegal to be "clearly reasonable"), adopted by, 2014 WL 956158 (March 12, 2014); McCutcheon v. Finkelstein Kern Steinberg & Cunningham, No. 3-11-0696, 2013 WL 4521016, at *3 (M.D. Tenn. Aug. 27, 2013) (after relatively lengthy analysis, compensating paralegal work at a rate of $75 per hour).[11]  Although these cases are not from the Western District of Tennessee, which includes Memphis, independent research indicates that the cost of living in Memphis is lower than the cost of living in Tennessee's two other major cities, Knoxville and Nashville. Thus, the cited cases remain sound foundations for estimating a reasonable hourly rate for paralegals in Memphis, Tennessee.

Consequently, the undersigned agrees with Hoehner that a reasonable hourly rate for paralegal work in Memphis in 2015 is $105 per hour.  When this rate is adjusted using the PPI–OL, the hourly rate for paralegals in 2016 is $107 per hour. The resulting adjustment in paralegal rates causes a deduction of **$1,195.90**.

## II.    Costs

In addition to seeking attorneys' fees, petitioners seek an award of costs for their counsel.  The costs are relatively routine, such as costs for medical records retrieval, mailings, photocopies, and telephone.  All these costs are reasonable, documented, and awarded in full.  In compliance with General Order No. 9, petitioners state that they incurred costs totaling $2,005.50 in pursuit of this claim. The requested costs consist of the legal fees for an attorney to arrange a guardianship for E.S.  These costs are reasonable, documented, and awarded in full.

## III.    Conclusion

The undersigned finds an award of attorneys' fees and costs appropriate. The undersigned awards petitioners the following amount for attorneys' fees and costs:

Summary
Requested Attorneys' Fees:                                      $26,034.00
Deductions (attorney and paralegal rate adjustments):           $5,914.40
Attorneys' Fees Awarded:                                        **$20,119.60**

---

[11] An anomalous result is Monroe, a FLSA class action case.  2014 WL 4472720, at *5 n.5 (listing paralegal billing at $175 per hour), at *11 (accepting proposed rate for support staff).

| Attorneys' Costs: | $1,996.14 |
|---|---|
| Deductions: | $0.00 |
| **Attorneys' Costs Awarded:** | **$1,996.14** |

| Requested Petitioners' Costs: | $2,005.50 |
|---|---|
| Deductions: | $0.00 |
| **Petitioners' Costs Awarded:** | **$2,005.50** |

| **Attorneys' Fees & Costs Awarded:** | **$22,115.74** |
|---|---|
| **Petitioners' Costs Awarded:** | **$2,005.50** |
| **Total Attorneys' Fees & Costs Awarded:** | **$24,121.24** |

Accordingly, the court awards:

a. **A lump sum of $22,115.74 in the form of a check made payable to petitioner and petitioners' attorney, William E. Cochran, Jr., of Black McLaren, et al., PC; and**

b. **A lump sum of $2,005.50 in the form of a check made payable to petitioners, Troy Sweatt and Brittany Sweatt, representing costs personally incurred.**

This represents reimbursement for attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e).  In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court shall enter judgment in accordance herewith.[12]

**IT IS SO ORDERED**.

S/Christian J. Moran
Christian J. Moran
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.